## D. M. E., on Behalf of N., Z., and W., Petitioner, v. D. D. E., Respondent.

Domestic Relations Court of New York, Family Court, New York County, December 11, 1942.

*Milton S. Harrison* for petitioner.

*Winfield De Witt* for respondent.

SIEGEL, J.   The petitioner as the mother of three infant children seeks an order requiring respondent, father of the children, to support them.   The parties were married on September 1, 1935, in Queens county, at a ceremonial marriage performed in accordance with the laws of the State of New York.

Petitioner and respondent have not been living together since September, 1942.   They reside in the borough of Manhattan.

The children are respectively four, three, and one and one-half years of age. At the present time the mother is employed at a salary of twenty-seven dollars per week, plus commissions which amount to about eight dollars per week. She works six days a week from 8:30 A. M. to 5:30 P. M. Since January, 1942, the respondent has been earning on the average of seventy dollars per week. In September, 1942, the petitioner learned that respondent was already married when he married her and that, in 1930, he had abandoned his former wife and their child in Utah. She also learned that his former wife had sued him for a divorce in February, 1936, and that a decree awarding her custody of their child was entered in May, 1936. Petitioner and respondent separated. The three children were taken by her, and she rented an apartment and arranged for a nursemaid to take care of the children during the day while she worked. This nursemaid agreed to sleep in and her wages were seventeen dollars a week. In October, 1942, petitioner was notified by the nursemaid that she would not remain. Efforts to secure a person to take her place were unavailing. Efforts to locate a suitable kindergarten in the neighborhood, where the children could be properly taken care of during the day, were also unsuccessful. As the nursemaid was leaving, something had to be done by petitioner as she had to keep on working. Efforts made by her to obtain a nursemaid within her limited financial means failed. She finally succeeded in locating a boarding school suitable for the children and situated at Great Neck, where the children have been since November 1, 1942. She secured a special rate of $130 per month for the three children.

An agreement had been entered into between the mother and the respondent on October 7, 1942, which provided that the children should reside with the mother who was to continue to maintain her residence in the city of New York, at which residence respondent father should have the right to visit the children. The agreement also provided that the respondent would pay to the mother twenty-seven dollars and fifty cents per week on Saturday of each week, commencing on October 10, 1942. In addition, he was also to pay all necessary medical bills, surgical bills, dental bills, hospital and nursing charges in connection with any illness of the children. In the event any serious operation be required, he was also to be responsible for the costs thereof only if he consented to the operation, which consent was not to be unreasonably withheld.

After the children had been placed in the boarding school, the respondent claimed that he would find no difficulty in procuring

a suitable nursemaid to take care of them at petitioner's home. When requested to give the names and addresses of such nursemaids he did not furnish any.

On .September 17, 1942, an action was commenced in the Supreme Court, Queens County, wherein the mother was the plaintiff and the respondent was the defendant, to annul their marriage on the ground that respondent had a former wife living at the time he married the mother and that she was innocent of that fact. (Civ. Pr. Act, §§ 1134, 1135.) The respondent's time to answer in the Supreme Court action has expired. Respondent stated before this court that he did not intend to defend the action.

On November 12, 1942, a motion made by the petitioner for an order pursuant to section 1169 of the Civil Practice Act, requiring respondent to pay the sum of twenty-seven dollars and fifty cents per week for the support of the children, was heard before Mr. Justice CUFF sitting in Special Term, who denied same. Thereupon, on November 17, 1942, the petitioner, in behalf of the three children, instituted proceedings in this court asking for an order requiring the respondent to support said children and asking that he be required to pay a fair and reasonable amount, and for such other and further relief as the law provides. On the same day, this court made a temporary order of twenty dollars per week to be paid by respondent. Both parties were represented by their present counsel and, by consent, the case was adjourned to the 24th day of November, 1942. On the latter date, the parties again appeared before the court and the case, by consent, was again adjourned to December 1, 1942, on which day testimony was taken by this court. Counsel for the respondent and for the petitioner stated that Justice CUFF had issued an order restraining the petitioner from proceeding in this court and reserved decision as to whether the restraining order would be continued. Thereafter, Mr. Justice CUFF, in a lengthy opinion (New York Law Journal, Dec. 5, 1942, p. 1772), decided: " Without considering the above reasons this court is without power to restrain this plaintiff from applying to the Domestic Relations Court or any other court for the relief which she is advised she is entitled to receive. All of the reasons that defendant urges for granting this motion should be submitted to the Domestic Relations Court where they will be given full consideration when that court is making a disposition of the wife's petition in behalf of her children. This motion is denied and the stay vacated.''

The action of Justice Cuff follows the decision rendered by the Appellate Division that an order of prohibition to stay this court will be refused and that the aggrieved party has the remedy of appeal. (See *Matter of Kohn* v. *Domestic Relations Court of the City of New York*, 244 App. Div. 829.)

Respondent has raised the issue that this court has no jurisdiction to make an order requiring him to support the children in the absence of an order of the Supreme Court providing for said support. It may be here stated that, in so far as relevant to this proceeding, the jurisdiction and powers conferred on this court include: " Jurisdiction within the city to hear and determine all proceedings to compel the support of a * * * child." (N. Y. City Dom. Rel. Ct. Act, § 91, subd. 1.)

" To order support of a * * * child * * * , irrespective of whether [he] is likely to become a public charge, as justice requires having due regard to the circumstances of the respective parties." (N. Y. City Dom. Rel. Act, § 92, subd. 1.)

" To include in the requirements of an order for support the providing of necessary shelter, food, clothing, care, medical attention, * * * the expense of educating his child, * * * and other proper and reasonable expenses." (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 2.)

" To require of persons legally chargeable with the support of a * * * child * * * and who are possessed of sufficient means or who are able to earn such means, the payment weekly, or at other fixed periods, of a fair and reasonable sum for such support, or as a contribution towards such support, according to the means of the persons so chargeable * * *." (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 3.)

" To make all orders for support run until further order of the court, except that orders for support of a child shall run until the child is seventeen years of age * * *." (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 4.)

" A husband is hereby declared to be chargeable with the support of his * * * children and, if possessed of sufficient means or able to earn such means, may be required to pay for their support a fair and reasonable sum according to his means, as may be determined by the court." (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 1.)

" A child born of a ceremonial marriage shall be deemed the legitimate child of its parents for all purposes of this act regardless of the validity of such marriage." (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 6.)

" A * * * father * * * may be required to furnish support * * *, if, * * * he * * * is residing or domiciled in the city * * * at the time of the filing of the petition for support." (N. Y. City Dom. Rel. Ct. Act, § 103, subd. 1, par. [a].)

The mother and respondent are held by this court to be residents of the city of New York and, even though the children are at Great Neck, this court has jurisdiction. (See § 103, subd. 1.) That this court possesses the power to order support for children, even though their parents are parties to an annulment action, is to be found in section 137, subdivision 2: " * * * In the absence of an order of the supreme court in such action providing for support of a child or children up to the age of seventeen years, the family court may entertain a petition for the support of such child or children."

That this court has the power to grant the requested relief, considering present needs, has been determined. (*Matter of Zammataro* v. *Zammataro,* 245 App. Div. 710; " *Varney* " v. " *Varney,*" 178 Misc. 165.) That the respondent's duty to support the children is absolute has been held in a series of cases. That the primary obligation of support of minor children rests upon their father has been held in *De Brauwere* v. *De Brauwere* (203 N. Y. 460). In *Mallina* v. *Mallina* (167 Misc. 343), it was decided that this implies maintenance not merely at the bare subsistence level of public relief budgets, but upon a standard commensurate with the father's economic condition. To this effect also are *Prindle* v. *Dearborn* (161 Misc. 95, 99) and " *Johnston* " v. " *Johnston* " (177 Misc. 618, 623).

The petitioner seeks relief under definite statutory regulations (see § 101, subd. 1) and not under the agreement. On the other hand, the respondent is seeking to be relieved from support of his children by the terms of a contract with their mother. Such contention must be overruled. (See Lindey on Separation Agreements, p. 230; *Krieger* v. *Krieger,* 162 Misc. 930.) The opinion in the *Krieger* case reads, in part, as follows: " The plaintiff seeks to recover certain sums of money expended for medical and dental services rendered to herself (the wife of the defendant) and her infant child (the son of the defendant). The defendant sets up a separation agreement duly executed between the plaintiff and the defendant (after they had parted), in which there is an agreement for the payment of thirty-five dollars for the support and maintenance of the said wife and the said infant child. This contract contains the usual blanket clauses stipulating that said sum shall be in full satisfaction

and discharge of any and all obligations on the part of the husband and includes the usual indemnity and exemption covenant characteristic of these compacts.  *  *  *  The defendant moves to dismiss the complaint as a matter of law, contending that the separation agreement is the full measure of the responsibility of the husband for any and all obligations to his wife or infant child, and since he has met them he cannot be held for the expenses constituting the subject of this action.''

After recognizing the legal principle that a provision for maintenance and support includes expenses for medical services, the court denied the defendant's motion to dismiss the claim for reimbursement on account of the expenses for the infant child, stating, at page 932:  '' But in considering the agreement, we realize that the duty of the father to support his child is distinct from the obligation to maintain his wife, and that the infant child is never a party to a separation agreement or a divorce action.  Hence, as far as the child is concerned, his rights have a distinct claim to consideration.''

During the hearing and later, Mrs. Elizabeth Barry of the Catholic Big Sisters endeavored to find a nursemaid for the petitioner and, later, also reported to both parties that no boarding school in New York city could be found which would take these three children and board them for $135 per month.

The respondent also contended that the present boarding school in Great Neck does not have the necessary protection against fire.  The petitioner contradicted his testimony.  In view of the law requiring the issuance of a license before the school could board children, it must be presumed that the authorities of Nassau county have performed their full duty.

The petitioner has requested an order of thirty-seven dollars and fifty cents per week for support of the three children.  This court, being required to take judicial notice of the increased Federal income tax which the respondent will be called upon to pay, believes that the sum of thirty dollars per week for the support and maintenance of the three children is a fair and equitable amount, effective as of December 11, 1942.  A permanent order to that effect is being made and entered.  The respondent is accordingly directed to make such payments.  On November 20, 1942, this court made a temporary order directing the respondent to pay the sum of twenty dollars per week, effective as of the 18th day of November, 1942.  The respondent has failed to comply with the terms of said order.  There is now due therein as arrears the sum of sixty dollars which the respondent is directed to pay at the rate of ten dollars per week,

each Friday, commencing as of December 11, 1942, until paid in full.

Five copies of this memorandum are being filed with the original, and the clerk of the court is hereby directed to mail or deliver one copy to each of the attorneys and one copy to the Assistant Corporation Counsel.